IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-40861-TLS |
| | ) | |
| TIMOTHY J. McPHERON, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |

### **ORDER**

This matter was submitted to the Court on the joint stipulation of facts (Fil. #59) and the affidavit/declaration of the parties (Fil. #57 and #58). The issues involve an objection to confirmation of plan (Fil. #15), a resistance thereto (Fil. #18), an objection to claim (Fil. #29), and a resistance thereto (Fil. #31). David P. Lepant represents Debtor, and John C. Hahn represents the creditor, Candace McPheron.

The objection to confirmation of plan and the objection to claim are intertwined. The creditor, Ms. McPheron, is the former spouse of Debtor and is the holder of a claim arising out of the parties' divorce decree. Ms. McPheron asserts that her claim is a priority unsecured claim constituting a domestic support obligation. Debtor has objected to the classification of the claim as a domestic support obligation. Ms. McPheron has also objected to the plan filed by Debtor, asserting that the bankruptcy and the plan were not filed in good faith.[1] For the reasons stated below, the objection to claim is sustained and the plan objection is overruled.

*Background*

The underlying facts are largely undisputed and the parties have entered into a stipulation of facts with respect to this matter (Fil. #59). In light of the stipulation, not all of the facts will be set forth in this order. However, certain bear mentioning.

The 20-year marriage of the parties ended in divorce on October 19, 2009. During their marriage, they resided in a home that Ms. McPheron acquired by gift from her parents, free and clear of liens and encumbrances. Subsequent to acquiring the home, the parties consolidated some debt and encumbered the home with a deed of trust.

The original divorce decree was filed on October 19, 2009. An amended decree was entered on February 11, 2010. At the time of the original decree, Ms. McPheron's gross income was approximately $1,386.00 per month and Debtor's gross income was approximately $2,478.00 per month. For the last 18 years, Ms. McPheron has worked out of her home as a day care provider. Debtor has worked various jobs outside the home.

---

[1]Ms. McPheron also objected to the plan for failure to commit all of Debtor's disposable income to the plan. However, Ms. McPheron appears to have abandoned that objection as it was not addressed in her brief.

Since the residence was a gift from Ms. McPheron's parents, the decree provided that she was to receive that property as a non-marital asset. The decree further provides as follows:

> iv. Debts:
> 1. Each party is responsible for one-half (50%) of the Citifinancial indebtedness on the Plaintiff's house as of August 20, 2009, in the amount of $76,956, subject to the following adjustments:
> > a. The Plaintiff should receive a credit for one-half of the amounts withdrawn by the Defendant from the Defendant's 401(k) in the amount of $19,831.40.
> > b. The Defendant should receive a credit in the amount of $15,000 for improvements made to the Plaintiff's house during the marriage.
> > c. Alter [sic] adjustments, the Plaintiff is responsible for $33,646.60 (44%) of the indebtedness on the Plaintiff's house, and the Defendant is responsible for $43,309.40 (56%) of the indebtedness on the Plaintiff's house.
>
> . . .
>
> vi. Equalization: The Defendant is hereby ordered to pay the sum of $43,309.40 towards the indebtedness on the home and should hold the Plaintiff harmless thereon.
>
> . . .
>
> viii. Alimony: Neither party shall pay alimony to the other.

## *Discussion*

Pursuant to 11 U.S.C. § 101(14A), the term "domestic support obligation" means:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
> (A) owed to or recoverable by –
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
> > (i) a separation agreement, divorce decree, or property settlement agreement;
> > (ii) an order of a court of record; or

>           (iii) a determination made in accordance with applicable
> nonbankruptcy law by a governmental unit; and
>      (D) not assigned to a nongovernmental entity, unless that obligation is
> assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's
> parent, legal guardian, or responsible relative for the purpose of collecting the debt.

This definition was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and has an impact throughout the Bankruptcy Code on issues of discharge, the automatic stay, priorities, exemptions, the means test, and the calculation of disposable income in a Chapter 13 case. For purposes of the case at hand, discharge and priorities are at issue. Domestic support obligations are not discharged in Chapter 13 proceedings. *See* 11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)(5). Further, domestic support obligations are priority claims pursuant to 11 U.S.C. § 507(a)(1)(A). If, on the other hand, the obligation is not a domestic support obligation, it would fall under 11 U.S.C. § 523(a)(15), which obligations are not excepted from discharge in Chapter 13 cases, nor are they entitled to priority status.

The BAPCPA amendments that added § 101(14A) and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support. When deciding whether a debt should be characterized as one for support or property settlement, "the crucial question is what function did the parties intend the agreement to serve when they entered into it." *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir. 1984) (citing *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983)). In making that factual determination, the court evaluates a number of factors, including whether the agreement contains a separate provision for alimony or child support, and whether the debt is conditional. *Ahlf v. Ahlf (In re Ahlf)*, 354 B.R. 884, 887 (Bankr. S.D. Iowa 2006) (citing *Morel v. Morel (In re Morel)*, 983 F.2d 104, 105 (8th Cir. 1992)). Other factors considered include:

> [T]he relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and, whether it would be difficult for the former spouse and children to subsist without the payments.

*Ahlf*, 354 B.R. at 887 (quoting *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997)).

The first issue to be addressed is Debtor's objection to the claim of Ms. McPheron. Debtor asserts that the claim, which is based on the portion of the decree assigning to Debtor responsibility for a portion of the indebtedness secured by Ms. McPheron's home, is not a domestic support obligation. It is significant that the divorce decree contains an express provision for child support, as well as an express alimony provision as follows: "Neither party shall pay alimony to the other." Debtor's obligation to pay $43,309.40 towards the indebtedness on the home is set forth in two sections of the decree, one entitled "Debts" and one entitled "Equalization." In calculating the

amount to be paid, the court began with an equal division of the indebtedness between the parties and then made certain adjustments based upon unique facts and circumstances. Debtor was ordered to pay the resulting amount towards the indebtedness on the home and to hold Ms. McPheron harmless therefrom.

Unfortunately, the divorce decree does not describe how that indebtedness is to be paid (i.e., lump sum, monthly, directly to the bank, or to Ms. McPheron). There is no indication that the judgment was in lieu of alimony or support. In fact, quite to the contrary, the decree indicates that it was simply a calculation dividing the only marital debt the parties appeared to have.

Ms. McPheron's argument relies heavily upon the current income disparity of the parties. However, their current income is not relevant to an analysis of whether the debt division in the divorce decree was intended to be a domestic support obligation. Instead, only the intent of the court at the time the decree was entered is relevant. According to the factual stipulation, there was an income disparity at the time the decree was entered – Debtor earned approximately 64% of the total family income. Despite that income disparity, and despite the 20-year marriage, the district court clearly determined that no alimony should be paid. No explanation was given, but the determination was clearly stated. One potential explanation, as Debtor points out, is that the income disparity is effectively eliminated once the child support obligation is factored into the equation. Perhaps that is why the court treated the parties as equals in dividing obligations and declining to award alimony. For the foregoing reasons, I find that the hold-harmless obligation with respect to the CitiFinancial indebtedness is not a domestic support obligation.

Turning now to the plan objection, Ms. McPheron argues that the bankruptcy case was not filed in good faith and the plan was not proposed in good faith. Specifically, she asserts that Debtor has filed the case solely to circumvent his obligation to her with respect to the indebtedness owed under the divorce decree.

11 U.S.C. § 1325(a)(3) provides that a Chapter 13 plan must be proposed in good faith and not by any means forbidden by law. In discussing the good faith obligation, the Eighth Circuit Bankruptcy Appellate Panel stated:

> The relevant inquiry regarding good faith is "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987). However, the foregoing inquiry is governed by a "totality of the circumstances" test. *Noreen*, 974 F.2d at 76; *LeMaire*, 898 F.2d at 1349; *In re Estus*, 695 F.2d 311, 316 (8th Cir. 1982). Factors which are particularly relevant to determining good faith under the totality of the circumstances include: (1) the nature of the debt sought to be discharged; (2) whether the debt would be dischargeable in a chapter 7 bankruptcy case; and (3) the debtor's motivation and sincerity in seeking chapter 13 relief. *LeMaire*, 898 F.2d at 1349 (citing *Estus*, 695 F.2d at 317). *See also In re*

> *Kurtz*, 238 B.R. 826, 830 (Bankr. D.N.D. 1999) ("Further consideration must be given to the sincerity of the Debtor in putting forth his Chapter 13 plan of repayment and whether that plan demonstrates real sincerity on the part of [the Debtor] to repay his creditors as best he can in exchange for the liberal Chapter 13 discharge."). Another relevant factor in determining good faith is the Debtor's pre-filing conduct. *LeMaire*, 898 F.2d at 1352 (citations omitted). However, even in light of egregious pre-filing conduct by the Debtor, a chapter 13 plan may be confirmed if other factors "suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." *Id.* (citation omitted).

*Banks v. Vandiver (In re Banks)*, 248 B.R. 799, 803 (B.A.P. 8th Cir. 2000).

While the mortgage indebtedness owed on Ms. McPheron's home dwarfs the other indebtedness owed by Debtor at the time of bankruptcy filing, the claims register in his bankruptcy indicates that he does owe significant additional debt. Beatrice Community Hospital filed a claim in excess of $1,200.00; the Nebraska Department of Revenue filed a claim for $633.45; a credit card company filed a claim for $350.44; the Internal Revenue Service filed a claim for $2,154.48; and CitiFinancial Auto filed a claim for $792.73. Further, CitiFinancial, Inc., the holder of the mortgage on Ms. McPheron's home, filed a claim for $79,429.58 since Debtor is a co-obligor on that entire indebtedness. Thus, Debtor's mortgage liability far exceeds the portion for which he was to hold Ms. McPheron harmless. A review of Schedule J also indicates that Debtor is not, by any means, living an extravagant lifestyle. Finally, Debtor submitted an affidavit that he ultimately determined the need to file bankruptcy after the Nebraska Department of Revenue began garnishing his wages.

Ms. McPheron does assert that Debtor's pre-petition conduct should factor into whether Debtor filed this bankruptcy and/or plan in good faith. In particular, she points out that Debtor withdrew substantial funds from his 401(k) account shortly before the divorce filing and even after the divorce filing and entry of an order of the divorce court prohibiting transfers of property. However, all of those withdrawals took place prior to entry of the divorce decree and the amended decree. The withdrawals were brought to the attention of the court handling the divorce case and were specifically addressed in the decree issued by that court in calculating the division of debts. Notably, that court did not make any findings of contempt, bad faith, or otherwise with respect to those withdrawals. Accordingly, those actions are not relevant to the issue of whether this bankruptcy case was filed in good faith.

In light of the foregoing circumstances, I find that Debtor filed his Chapter 13 case and proposed his Chapter 13 plan in good faith.

IT IS, THEREFORE, ORDERED that:

1.      The objection to claim (Fil. #29) is sustained and the claim is reclassified as a general unsecured claim; and

  2. The objection to confirmation of plan (Fil. #15) is overruled, and the plan (Fil. #4) may be confirmed provided all other confirmation requirements have been met.

  DATED: December 15, 2010.

            BY THE COURT:

            /s/ Thomas L. Saladino
            Chief Judge

Notice given by the Court to:
  *David P. Lepant
  *John C. Hahn
  Kathleen Laughlin
  United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.